IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JASON TRANG,                                   No. 3:22-cv-01744-HZ

                          Plaintiff,           OPINION & ORDER

       v.

JPMORGAN CHASE BANK, N.A.,

                          Defendant.


Andrew M. Cole
Cole Tait PC
1919 Willamette Falls Dr
West Linn, OR 97068

       Attorney for Plaintiff


Pilar C. French
Angela Foster
Lane Powell PC
601 SW Second Ave, Ste 2100
Portland, OR 97204

       Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Jason Trang sued Defendant JPMorgan Chase Bank, alleging claims under the

Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.*, state-law claims for

negligence and breach of the implied covenant of good faith and fair dealing, and a claim for

declaratory relief. Am. Compl., ECF 21. Defendant moves to dismiss most of the claims in the

Amended Complaint for failure to state a claim, or in the alternative to strike portions thereof.

ECF 27. For the following reasons, the Court grants the motion in part and denies it in part.

## BACKGROUND

Plaintiff alleges that "[b]etween September 7, 2021 and December 17, 2021, a

perpetrator(s) unknown to Plaintiff ('Trang') accessed Trang's checking and savings accounts

with Defendant ('Chase Bank')." Am. Compl. ¶ 6. "Without Trang's permission or

authorization, the perpetrator made unauthorized electronic fund transfers, to various crypto

currency account[s] in multiple transactions[.]" *Id.* The unauthorized transfers from Plaintiff's

savings account "first appeared on Trang's September 30, 2021, Chase Bank periodic

statement." *Id.* ¶ 7. The unauthorized transfers from Plaintiff's checking account "first appeared

on Trang's October 26, 2021 Chase Bank periodic statement." *Id.* ¶ 8.

Plaintiff "discovered the unauthorized fund transfers on December 28, 2021 and

immediately called Chase." *Id.* ¶ 9. He was placed on hold and the call disconnected; when he

redialed, he received an after-hours message. *Id.* Plaintiff called Defendant again on December

29 and spoke with a customer service representative named Maya. *Id.* Maya explained what

Plaintiff needed to do to make a claim and "undertook to enter Trang's claim for unauthorized

transfers." *Id.* Plaintiff listed about 20 claims, and Maya told him she would enter the remaining

claims "based upon Trang's September through November 2021 bank statements and his notice

to her that he owned no crypto currency accounts." *Id.* "Maya informed Trang that the unauthorized transfers 'would be covered,' and that he would be contacted within ten days concerning his claim." *Id.* However, Plaintiff received no communication from Defendant within ten days. *Id.* ¶ 10.

On January 10, 2022, Plaintiff called Defendant's customer service department and was told that his claim was denied. *Id.* The same day, Plaintiff went to his local branch to speak with his banker, and returned the next day to meet with him. *Id.* ¶ 11. Plaintiff's banker contacted Defendant's claims department and "confirmed the 57 transactions which were the subject of Trang's claim, and re-filed Trang's claim." *Id.* Plaintiff's banker told him around one week later that Defendant had separated the claims into six separate claims by "mistake." *Id.* Defendant paid one claim, No. 81472676573006. *Id.* Defendant paid one other claim, "but denied or otherwise took no action on the remaining claims." *Id.* ¶ 12. Plaintiff received no notices from Defendant other than "a few 'Updates'" his banker printed and gave to him during weekly meetings between January and April 2022. *Id.* Plaintiff alleges that the six claims were handled as follows:

Claim 474736372780001 "identifies unauthorized transfers from Trang's savings account ending 9116 between September 7, 2021 and November 5, 2021." *Id.* ¶ 13(a). The claim was initially denied, and on March 17, 2022, Defendant provided an update stating, "As we discussed and agreed, no action will be taken," and 'This inquiry is now resolved." *Id.* However, Plaintiff "never specifically discussed with any Chase representative the determination of this claim nor agreed that no action should be taken." *Id.* Plaintiff alleges that Defendant did not adequately investigate his claim, provisionally credit his account, or provide any written explanation of its findings. *Id.*

Claim 624739155030001 "identifies unauthorized transfers from Trang's savings account number 9116 occurring between October 4, 2021 and October 15, 2021." *Id.* ¶ 13(b). Plaintiff alleges that Defendant provided no notification about this claim besides an initial denial, and did not provisionally credit his account or adequately investigate the claim. *Id.*

Claim 874741320140001 "describ[es] one authorized transfer from Trang's savings account 9116 occurring on October 4, 2021." *Id.* ¶ 13(c). Plaintiff alleges that he received no communication about this claim other than an initial denial and a March 15, 2022, letter stating, "as we discussed and agreed no action will be taken," and "this inquiry is now resolved." *Id.* Plaintiff did not discuss the determination of this claim with Defendant. *Id.* He alleges that Defendant failed to adequately investigate the claim. *Id.*

Claim 474736372780002 "identifies seventeen unauthorized transfers from Trang's checking account number 8680 between October 22, 2021 and December 17, 2021." *Id.* ¶ 13(d). Plaintiff alleges that Defendant made provisional credit on ten of the transfers in April 2022, but then re-debited all of them. *Id.* Defendant denied the claim as to the remaining seven transfers without provisional credit on March 3, 2022. *Id.* Defendant provided a "disputed transaction(s)" questionnaire on March 14 and 18, 2022, and asked Plaintiff to complete and submit it. *Id.* Plaintiff submitted the form on March 21, 2022. *Id.* Plaintiff did not receive an explanation of the results of the investigation. *Id.*

Claim 114716970850001 "involv[es] five unauthorized transactions from Trang's checking account 8680 between December 7, 2021 and December 21, 2021." *Id.* ¶ 13(e). Plaintiff alleges that Defendant made provisional credit to his account on January 26, 2022, but re-debited his account on March 10, 2022. *Id.* On March 15, 2022, Defendant sent Plaintiff a letter stating, "as we discussed and agreed no action will be taken," and "this inquiry is now

resolved." *Id.* Plaintiff did not discuss this claim with Defendant or agree that no action should be taken. *Id.* He alleges the investigation of this claim was inadequate. *Id.*

Claim 81472676573006 "involv[es] one unauthorized transfer from Trang's checking account number 8680 on September 29, 2021." *Id.* ¶ 13(f). Defendant paid the claim on January 26, 2022. *Id.* Plaintiff alleges that payment was not timely. *Id.*

Plaintiff alleges that during the investigation of his claims, Defendant advised him that it could not determine that Plaintiff was not the individual making the transfers. *Id.* ¶ 14. Plaintiff was advised to contact the cryptocurrency companies with whom the individual had opened accounts. *Id.* Plaintiff contacted these companies, and one of them confirmed that Plaintiff had not opened an account with the company. *Id.* ¶ 15. Plaintiff provided this information to Defendant, but Defendant responded that the claim was closed and that it could not do anything. *Id.* Plaintiff also alleges that after he reported the transfers, "the perpetrator(s) attempted on two subsequent occasions to access Trang's new checking and savings accounts, which attempts Chase Bank denied." *Id.* ¶ 23(h).

On August 30, 2022, Plaintiff submitted a complaint to the Consumer Financial Protection Bureau. *Id.* ¶ 17. On October 10, 2022, Defendant informed Plaintiff that its position was unchanged. *Id.* Plaintiff sued Defendant on November 8, 2022. ECF 1. Plaintiff filed an Amended Complaint on February 15, 2023, alleging claims under the EFTA and state-law claims for negligence and violation of the implied covenant of good faith and fair dealing, as well as a claim for declaratory relief.

//

//

//

**STANDARDS**

**I.    Motion to Dismiss**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

**II.    Motion to Strike**

The court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). Granting a

motion to strike is within the discretion of the district court. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 975 (9th Cir. 2010) (motion to strike under Rule 12(f) reviewed for abuse of discretion); *Rapid Funding Group, Inc. v. Keybank Nat'l Ass'n*, No. 07-1348-PK, 2009 WL 2878545, at *2 (D. Or. Sept. 2, 2009) (disposition of a motion to strike is within the discretion of the district court). "[S]triking a party's pleadings is an extreme measure[.]" *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000). Rule 12(f) motions to strike are viewed with disfavor and are infrequently granted. *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 561 F. Supp. 2d 1187, 1189 (D. Or. 2008), *aff'd*, 608 F.3d 1084 (9th Cir. 2010).

## DISCUSSION

The Court concludes that the majority of Plaintiff's EFTA claims are subject to dismissal. Plaintiff's claims for negligence, breach of the implied covenant of good faith and fair dealing, and declaratory relief also fail to state a claim. However, the Court grants leave to amend most of the claims.

## I.    Incorporation of Deposit Account Agreement

Defendant asks the Court to incorporate the Deposit Account Agreement between Plaintiff and Defendant. Def. Mot. 5; Foster Decl. Ex. 1, ECF 28 (Deposit Account Agreement). "Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). However, a court "may consider evidence on which the complaint 'necessarily relies' if (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). In contrast, the "mere mention of the existence of a document is insufficient to

incorporate the contents of a document." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). And a document that "merely creates a defense to the well-pled allegations in the complaint" generally should not be incorporated by reference because it "did not necessarily form the basis of the complaint." *Khoja*, 899 F.3d at 1002.

Defendant points to one reference to the Account Agreement in the Complaint. Def. Mot. 5. Plaintiff alleges that "[a]t all material times, Trang performed all things required of him pursuant to his account agreement with Chase, as modified in the course of processing Trang's claims as alleged above." Am. Compl. ¶ 30. This allegation is central to Plaintiff's claim for breach of the covenant of good faith and fair dealing. And Plaintiff does not question the authenticity of the document attached to Defendant's Motion. The Court therefore incorporates the Account Agreement with respect to Plaintiff's good faith and fair dealing claim. But because the Account Agreement is not referenced with respect to Plaintiff's EFTA and negligence claims, and is not central to those claims, the Court does not incorporate it with respect to those claims.

## II.    EFTA Claim

Plaintiff alleges that Defendant violated two sections of the EFTA, 15 U.S.C. §§ 1693f and 1693g. Am. Compl. ¶¶ 19-24. These provisions address the error resolution process and the cap on consumer liability. 15 U.S.C. §§ 1693f and 1693g. Defendant argues that the liability cap claims must be dismissed as to most of the transfers because the statute of limitations bars the claims for transfers made before November 8, 2021, and Defendant can show that some of the later transfers would not have occurred if Plaintiff had timely notified Defendant. Def. Mot. 7-12. Defendant argues that the error resolution claims fail to state a claim because notice was not timely, so there was no duty to investigate. *Id.* at 12-13. Defendant is correct with respect to the liability cap claims, but only partially correct with respect to the error resolution claims.

A.      Relevant Substantive EFTA Provisions

Congress enacted the EFTA "to provide a basic framework establishing the rights,

liabilities, and responsibilities of participants in electronic fund and remittance transfer systems."

15 U.S.C. § 1693(b). "The primary objective of this subchapter, however, is the provision of

individual consumer rights." *Id.* The EFTA requires a financial institution to make written

documentation of an electronic fund transfer ("EFT") "at the time the transfer is initiated." *Id.* §

1693d(a). Financial institutions must also "provide each consumer with a periodic statement for

each account of such consumer that may be accessed by means of an electronic fund transfer."

*Id.* § 1693d(c).

The EFTA lays out the process for consumers and financial institutions to follow if a

consumer finds an error in their account. *Id.* § 1693f. An "error" includes "an unauthorized

electronic fund transfer." *Id.* § 1693f(f)(1). "If a financial institution, within sixty days after

having transmitted to a consumer documentation pursuant to section 1693d(a), (c), or (d) of this

title or notification pursuant to section 1693d(b) of this title, receives oral or written notice in

which the consumer" provides their name and account number, indicates the error, and explains

why it is an error, the financial institution has a duty to investigate the error. *Id.* § 1693f(a). The

statute requires the financial institution to "determine whether an error has occurred, and report

or mail the results of such investigation and determination to the consumer within ten business

days." *Id.* But if the financial institution provisionally credits the consumer's account after

receiving a report of an error, the institution has 45 days to investigate. *Id.* § 1693f(c). "If the

financial institution determines that an error did occur, it shall promptly, but in no event more

than one business day after such determination, correct the error, subject to section 1693g of this

title, including the crediting of interest where applicable." *Id.* § 1693f(b). "If the financial

institution determines after its investigation pursuant to subsection (a) or (c) that an error did not

occur, it shall deliver or mail to the consumer an explanation of its findings within 3 business

days after the conclusion of its investigation[.]" *Id.* § 1693f(d). The official interpretation of the

regulations provides that "[a]n institution is not required to comply with the requirements of this

section for any notice of error from the consumer that is received by the institution later than 60

days from the date on which the periodic statement first reflecting the error is sent." 12 C.F.R. pt.

1005, Supp. I, 11(b)(1) ¶ 7.

> The statute also caps consumer liability for unauthorized transfers:

> In no event, however, shall a consumer's liability for an unauthorized transfer exceed the lesser of –
> (1) $50; or
> (2) the amount of money or value of property or services obtained in such unauthorized electronic fund transfer prior to the time the financial institution is notified of, or otherwise becomes aware of, circumstances which lead to the reasonable belief that an unauthorized electronic fund transfer involving the consumer's account has been or may be effected.

*Id.* § 1693g(a). This cap is subject to an exception:

> Notwithstanding the foregoing, reimbursement need not be made to the consumer for losses the financial institution establishes would not have occurred but for the failure of the consumer to report within sixty days of transmittal of the statement (or in extenuating circumstances such as extended travel or hospitalization, within a reasonable time under the circumstances) any unauthorized electronic fund transfer or account error which appears on the periodic statement provided to the consumer under section 1693d of this title.

*Id.* The financial institution bears the burden to show that the transfer was authorized or that the

conditions for consumer liability have been met. *Id.* § 1693g(b). In sum:

> [T]he cap on liability will be lifted if: (1) an unauthorized transfer appears on the monthly statement banks must send to consumers under 15 U.S.C. § 1693d(c); (2) the consumer fails to report the unauthorized transfer to her bank within 60 days after the statement is sent to her; and (3) the bank can establish that unauthorized transfers made after the 60-day period would not have occurred but for the consumer's failure to provide timely notice of the earlier unauthorized transfer.

*Widjaja v. JPMorgan Chase Bank, N.A.*, 21 F. 4th 579, 582-83 (9th Cir. 2021). "In that scenario, the consumer's liability for unauthorized transfers that occur within the 60-day period cannot exceed $50 or $500 (depending on the circumstances), but the consumer faces unlimited liability for unauthorized transfers occurring outside the 60-day period." *Id.* at 583 (citing 12 C.F.R. § 1005.6(b)(3); 12 C.F.R. pt. 1005, Supp. I, 6(b)(3) ¶ 1). A consumer's failure to notify a bank of an unauthorized transfer within 60 days does not lift the liability cap for the 60-day period. 12 C.F.R. pt. 1005, Supp. I, 6(b)(3) ¶ 2.

   i.  Application to Error Resolution Claims

  Defendant argues that it was not required to follow the EFTA's error resolution procedures because Plaintiff failed to report the fraudulent transfers within 60 days of the bank statements first containing the transfers. Def. Mot. 12-13 (citing 12 C.F.R. pt. 1005, Supp. I, 11(b)(1) ¶ 7). Plaintiff's savings account statement first reflecting the transfers was issued on September 30, 2021. Am. Compl. ¶ 7. Plaintiff's checking account statement first reflecting the transfers was issued on October 26, 2021. *Id.* ¶ 8. Plaintiff reported the transfers on December 29, 2021. *Id.* ¶ 9. Plaintiff argues that the notice provision "applies to each and every statement on which an unauthorized transfer appears." Pl. Resp. 18, ECF 31.

  The Court concludes that Plaintiff's interpretation of the statute is correct here. Plaintiff does not allege that the transfers were part of a series of regular, recurring transfers such that Defendant's position might be appropriate here. The list of transfers attached to the Amended Complaint shows that they were for varied amounts and to varied transferees. Am. Compl. Ex. A. The transfers cannot reasonably be treated as a unit. Each transfer represents an individual error. With each new bank statement, Plaintiff had a new 60-day window in which to report the new unauthorized transfers on that statement to Defendant and trigger Defendant's obligation to

investigate. Defendant concedes that under this interpretation, Plaintiff's claims would survive for the unauthorized transfers in his November and December bank statements. Def. Reply 13-14, ECF 34. The Court therefore grants Defendant's Motion to Dismiss Plaintiff's error resolution claims with respect to Plaintiff's September and October bank statements, and denies the Motion with respect to Plaintiff's November and December bank statements.

ii.    Application to Liability Cap Claims

Defendant argues that Plaintiff's liability is not capped for transactions occurring after November 29, 2021. Def. Mot. 10. Defendant asserts that it properly declined to refund transactions that occurred in December 2021 "because those transactions took place more than 60 days after issuance of Plaintiff's September 30, 2021 account statement that first showed unauthorized transactions and the transfers made after that 60-day period would not have occurred, but for Plaintiff's failure to provide timely notice of the earlier unauthorized transactions." *Id.* at 11. Defendant asserts that the 60-day period ran from September 30, 2021, to November 29, 2021. *Id.* Plaintiff suggests that it ran until November 30, 2021. Pl. Resp. 6. Defendant's dates are correct, as Plaintiff's proposed end date would create a 61-day period. Next, Defendant points to allegations in the Amended Complaint that Defendant denied two subsequent attempts to access Plaintiff's new checking and savings accounts as evidence that transfers outside the 60-day period would not have happened if Plaintiff had timely reported the earlier transfers. Def. Mot. 11; Am. Compl. ¶ 23(h). Plaintiff counters that this issue "is not ripe for decision in this Rule 12(b) proceeding." Pl. Resp. 4 n.1.

This issue is ripe for decision. Plaintiff's position appears consistent with the statute, which states that the financial institution bears the burden to show that the conditions of liability have been met. 15 U.S.C. § 1693g(b). However, in *Widjaja*, the Ninth Circuit stated, "When, as

here, a bank concludes that the EFTA authorizes liability in excess of the default cap, the consumer must allege facts plausibly suggesting that the bank's conclusion is wrong in order to state a claim that the bank has violated § 1693g." 21 F.4th at 584. "A consumer must therefore allege facts plausibly suggesting that even if she *had* reported an unauthorized transfer within the 60-day period, the subsequent unauthorized transfers for which she seeks reimbursement would still have occurred." *Id.* The plaintiff in *Widjaja* met her pleading burden because she alleged that Defendant learned of a security breach but did nothing to protect her account. *Id.* Here, Plaintiff alleges that after he reported the transfers, Defendant denied two subsequent unauthorized attempts to access Plaintiff's new accounts. Am. Compl. ¶ 23(h). Plaintiff has not pleaded facts tending to show that the transfers outside the 60-day period would still have occurred even if he had timely reported the earlier transfers. Defendant's Motion to Dismiss Plaintiff's liability cap claims for transfers outside the 60-day period is granted. The Court now turns to the transfers within the 60-day period.

B.    Statute of Limitations

Defendant moves to dismiss Plaintiff's liability cap claims for all transfers that occurred before November 8, 2021, as outside the EFTA's statute of limitations. Def. Mot. 7. "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)).

The EFTA provides that "any person who fails to comply with any provision of this subchapter with respect to any consumer, except for an error resolved in accordance with section 1693f of this title, is liable to such consumer" as enumerated. 15 U.S.C. § 1693m(a). "Without

regard to the amount in controversy, any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." *Id.* § 1693m(g). The Ninth Circuit has not interpreted this provision.

The Court first addresses Defendant's argument that the EFTA's statute of limitations is jurisdictional. Def. Mot. 8. Plaintiff did not respond to this argument. When a time bar is jurisdictional, "a litigant's failure to comply with the bar deprives a court of all authority to hear a case." *United States v. Wong*, 575 U.S. 402, 408-09 (2015). Because of the "harsh consequences" of this result, a statute of limitations may "cabin a court's power only if Congress has clearly state[d] as much." *Id.* at 409 (internal quotations omitted) (alteration in original). A statute of limitations may be jurisdictional when it speaks to the court's power to hear the suit in addition to the claim's timeliness. *Id.* at 410.

The Court concludes that the EFTA's statute of limitations is not jurisdictional. According to Defendant, the statute of limitations is jurisdictional because it addresses both the court's jurisdiction and the time bar. Def. Mot. 8. However, the Ninth Circuit rejected a similar argument with respect to the statute of limitations in the Fair Debt Collection Practices Act ("FDCPA"). *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 939-40 (9th Cir. 2009), *abrogated on other grounds by Rotkiske v. Klemm*, 140 S. Ct. 355 (2019). The FDCPA's statute of limitations reads: "Jurisdiction: An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Given the similarity between the FDCPA provision and the EFTA provision, and the two statutes' similar purpose of protecting

consumers, the Court concludes that the result is the same here. The statute of limitations is not

jurisdictional. The Court now turns to when the statute of limitations begins to run.

Defendant argues that the statute of limitations for Plaintiff's liability cap claims began to

run on the date of each unauthorized transfer. Def. Mot. 7-8. Plaintiff asserts that he had until

November 30, 2022, to file suit. Pl. Resp. 2. Although he does not say so directly, he appears to

argue that he had one year from the end of the 60-day limited liability period to file suit. *See id.*

Plaintiff also argues that an unauthorized transfer constitutes an error, not a violation, so there

was no violation of the EFTA at the time of the transfer. *Id.* at 2, 8-9.

Defendant is correct. The general rule is "that the limitations period commences when the

plaintiff has a complete and present cause of action." *Bay Area Laundry & Dry Cleaning

Pension Tr. Fund v. Ferbar Corp. of California*, 522 U.S. 192, 201 (1997) (internal quotations

omitted). Other district courts have held that the statute of limitations on liability cap claims

begins to run at the time of each individual unauthorized transfer. *Zaidi v. JP Morgan Chase

Bank, N.A.*, No. 219CV1080DRHARL, 2021 WL 848864, at *5 (E.D.N.Y. Mar. 5, 2021);

*Soileau v. Midsouth Bancorp Inc.*, Case No. 6:19-cv-00537, 2019 WL 5296499, at *4 (W.D. La.

July 19, 2019); *Woodruff v. Bank of Am., N.A.*, No. 1:18-CV-3556-MHC, 2018 WL 11461338, at

*10 (N.D. Ga. Dec. 4, 2018); *Katz v. JP Morgan Chase, N.A.*, No. 9:14-CV-80820, 2015 WL

11251764, at *4 (S.D. Fla. Feb. 10, 2015). The Ninth Circuit did not address the issue in *Widjaja*

because the plaintiff conceded to this interpretation of the statute before the district court.

*Widjaja v. JPMorgan Chase Bank, N.A.*, 2020 WL 4932065, at *1 (C.D. Cal. July 24, 2020).

The EFTA's statute of limitations provides that suit must be filed "within one year from

the date of the occurrence of the violation." 15 U.S.C. § 1693m(g). Plaintiff points to the

definition of "error," which includes an unauthorized transfer, and argues that an unauthorized

transfer is an error, not a violation. 15 U.S.C. § 1693f(f)(1); Pl. Resp. 8-11. But the definition of

"error" in § 1693f is limited by its terms to that section. 15 U.S.C. § 1693f ("For the purpose

of this section, an error consists of—"). At the moment an unauthorized transfer of funds from

the consumer's account occurs, the consumer is held liable for it, and thus § 1693g is violated if

the amount transferred exceeds the statutory cap. Unlike the error resolution provision, the

liability cap provision does not spell out a series of steps for the consumer and the financial

institution to take to resolve the question of liability. It simply caps the liability of the consumer

and provides a means for the financial institution to attempt to shift some of the liability back to

the consumer. *Id.* § 1693g. The initial statutory allocation of liability for the unauthorized

transfer does not require the financial institution to know that the transfer was unauthorized or to

have acted wrongfully in allowing it to occur. It requires only that the transfer occur. Because the

liability cap provision does not depend on any act by the financial institution beyond allowing

the unauthorized transfer to occur, the provision is violated as soon as the transfer occurs, and a

consumer has a cause of action for limitation of liability as soon as the transfer occurs.

Plaintiff cites no cases adopting the theory that the statute of limitations for liability cap

claims begins to run once the 60-day period ends. Nor does he point to anything in the statute

suggesting that Congress intended such a result. The Supreme Court's interpretation of the

analogous limitations provision in the FDCPA indicates that this theory is untenable. In *Rotkiske*,

the plaintiff consumer sued a debt collector for attempting to collect a debt outside the applicable

state limitations period in violation of the FDCPA. 140 S. Ct. at 359. To explain his untimely

filing of his FDCPA claim, the plaintiff alleged that the defendant had improperly served its debt

collection lawsuit such that the plaintiff had no notice of it. *Id.* The FDCPA's statute of

limitations provided that the plaintiff's suit could be brought "'within one year from the date on

which the violation occurs.'" *Id.* at 360 (quoting 15 U.S.C. § 1692k(d)). The Supreme Court held

that under the plain language of the statute, no discovery rule applied, and "[t]he FDCPA

limitations period begins to run on the date the alleged FDCPA violation actually happened." *Id.*

Because the plaintiff did not sue the debt collector within one year of its alleged unlawful

attempt to collect the debt, the FDCPA suit was untimely. *See id.* The same reasoning applies

here. Each time an unauthorized transfer was made, the one-year statute of limitations began to

run, even if the 60-day period had not ended or Plaintiff was not yet aware of the transfers.

     Plaintiff also suggests that his cause of action did not arise until Defendant failed to act

on his claims. Pl. Resp. 10-11. Plaintiff relies on *Bisbey v. D.C. Nat. Bank*, 793 F.2d 315, 317

(D.C. Cir. 1986) and *Berenson v. Nat'l Fin. Servs., LLC*, 403 F. Supp. 2d 133, 145 (D. Mass.

2005), both of which address error resolution claims, not liability cap claims. One district court

did hold that the plaintiff's cause of action for limitation of liability arose after the defendant

bank investigated and concluded that the funds could not be recovered, but only because the

court equitably tolled the statute of limitations, as the defendant had failed to send the plaintiff

bank statements for the account. *Sachs v. Citizens Fin. Grp., Inc.*, No. 3:20CV570 (JBA), 2021

WL 3421710, at *4 (D. Conn. Aug. 4, 2021). No such circumstances are alleged here. For

Plaintiff's liability cap claims, the cause of action for each transfer came into existence when the

transfer occurred, because at that time Plaintiff could assert his right not to be held liable for the

amount of the transfer.

     Plaintiff devotes much of his argument to the proposition that his untimely notice to

Defendant does not extinguish his liability cap claims for the initial 60-day period. That is true.

The official interpretation of the regulations establishes that untimely notice to a financial

institution does not by itself lift the consumer's liability cap for the 60-day period. 12 C.F.R. pt.

1005, Supp. I, 6(b)(3) ¶ 2. The problem here is not Plaintiff's relatively short delay in notifying Defendant but Plaintiff's longer delay in suing Defendant.

Finally, Plaintiff analogizes to *Barnes v. Chase Home Finance, LLC*, 825 F. Supp. 2d 1057 (D. Or. 2011), a case addressing the rescission period for loan agreements under the Truth in Lending Act ("TILA"). Pl. Resp. 14-17. *Barnes* considered whether a provision of TILA was "a limitation on the time for a borrower to invoke his right to rescission with the lender or on a borrower's right to bring a lawsuit to enforce that right." 825 F. Supp. 2d at 1064. Recognizing that circuits were split on the issue, the *Barnes* court concluded that the provision limited the borrower's exercise of the right of rescission rather than the timing of a lawsuit to enforce that right. *Id. Barnes* provides no guidance here. The relevant TILA provision states that "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first[.]" 15 U.S.C. § 1635(f). This provision is not similar to the relevant EFTA provision. The TILA provision does not speak of bringing suit, while the EFTA provision does. *Compare* § 1635(f) *with* § 1693m(g).

In sum, the Court dismisses Plaintiff's EFTA claims in part. Plaintiff's error resolution claims are dismissed with respect to transfers first appearing in his September and October bank statements, but not transfers first appearing in his November and December bank statements. Plaintiff's liability cap claims are dismissed as to transfers occurring before November 8, 2021, because they are barred by the statute of limitations. The Court also dismisses Plaintiff's liability cap claims as to transfers occurring after November 29, 2021, because Plaintiff has not alleged facts tending to show that those transfers would still have occurred even if he had timely reported the earlier transfers. The Court now turns to Plaintiff's state-law claims.

### III.    Negligence Claim

Plaintiff's negligence claim alleges that Defendant undertook a duty to instruct him as to how to make a claim and to enter the report of his claim. Am. Compl. ¶ 26. Plaintiff alleges that Defendant "was negligent in failing to accurately and completely identify the unauthorized transfers which were the basis for Trang's EFTA claims, including but not limited to, mischaracterizing Trang's claims as 'inquiry only.'" *Id.* ¶ 27. Plaintiff alleges that Defendant "was further negligent in failing to adequately investigate Trang's claims which, if properly done, would have revealed that Trang was limited from liability on submitted claims under the provisions of the EFTA." *Id.* Plaintiff alleges that this resulted in a wrongful denial of one or more of his claims. *Id.* ¶ 28. Defendant argues that Plaintiff cannot recover under tort theory because the dispute arises from the parties' contractual relationship, and Plaintiff has not pleaded a special relationship. Def. Mot. 13-15. Plaintiff's response does not address this argument, and Defendant argues that Plaintiff thereby abandoned his claim. Def. Reply 3.

The Ninth Circuit has held that "[a] plaintiff who makes a claim for injunctive relief in his complaint, but fails to raise the issue in response to a defendant's motion to dismiss on the grounds of immunity from money damages, has effectively abandoned his claim, and cannot raise it on appeal." *Walsh v. Nevada Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006). Other courts in this district have dismissed claims in a complaint when the plaintiff fails to respond to arguments in a motion to dismiss those claims. *Wolfe v. City of Portland*, 566 F. Supp. 3d 1069, 1089 (D. Or. 2021) (dismissing claims under 42 U.S.C. § 1983 against one defendant where plaintiff's response brief did not address defendant's arguments in favor of dismissal); *Index Newspapers LLC v. City of Portland*, No. 3:20-CV-1035-SI, 2023 WL

2666538, at *6 (D. Or. Mar. 28, 2023) (dismissing plaintiffs' claims against defendant where plaintiffs did not respond to defendant's argument that they had no remaining justiciable claims).

Plaintiff did not respond to Defendant's argument that his negligence claim is not cognizable. That alone is a sufficient basis to dismiss the claim. But Defendant also prevails on the merits.

Oregon law provides:

a tort action between parties to a contract can arise when the plaintiff's damages result from breach of an obligation that is independent of the terms of the contract, that is, an obligation that the law imposes on the defendant because of his or her relationship to the plaintiff, regardless of the terms of the contract between them.

*Jones v. Emerald Pac. Homes, Inc.*, 188 Or. App. 471, 476, 71 P.3d 574 (2003). "The plaintiff's tort claim may exist even if it is based on an obligation that the defendant assumes as an express or implied term of the contract, so long as the obligation would exist even if it were not in the contract." *Id.* This generally requires a relationship that "impose[s] obligations beyond the common law duty to exercise reasonable care to prevent foreseeable harm." *Id.* at 477 (internal quotations omitted). Examples of such relationships include those between professionals and their clients, "those between principals such as brokers and their agents; those between trustees and beneficiaries; and, in some instances, those between insurers and their insureds." *Id.* In such relationships, "'the party who is owed the duty effectively has authorized the party who owes the duty to exercise independent judgment in the former party's behalf and in the former party's interests.'" *Id.* (quoting *Conway v. Pacific Univ.*, 324 Or. 231, 240, 924 P.2d 818 (1996)). Oregon courts have held that a banker-depositor relationship is not a special relationship giving rise to a negligence claim. *Stevens v. First Interstate Bank of California*, 167 Or. App. 280, 287, 999 P.2d 551 (2000) ("The relationship between plaintiffs, as depositors, and their bank was not of the sort that Oregon courts have found gives rise to the requisite distinct 'legally protected

interest.'"). *See also Uptown Heights Assocs. Ltd. P'ship v. Seafirst Corp.*, 320 Or. 638, 650, 891
P.2d 639 (1995) (no special relationship between plaintiff borrower and defendant bank).

Plaintiff has not pleaded facts showing the existence of a special relationship, and has
cited no legal authority allowing his negligence claim to proceed on an alternate basis. The Court
grants Defendant's Motion to Dismiss Plaintiff's negligence claim.

## IV.    Good Faith and Fair Dealing Claim

Plaintiff alleges that Defendant breached the implied covenant of good faith and fair
dealing in the parties' account agreement. Am. Compl. ¶¶ 30-32. He alleges that at all material
times he performed as required by his account agreement, "as modified in the course of
processing Trang's claims as alleged above," that he reasonably relied on Defendant's
instructions in submitting his claim, and that he suffered economic damages as a result of
Defendant's conduct. *Id.*[1] Defendant argues that the claim must be dismissed because Plaintiff
failed to comply with the terms of the Account Agreement and thus Defendant had no duty to
investigate. Def. Mot. 16. Defendant also argues that Plaintiff failed to address this argument and
thereby conceded it. Def. Reply 3. Plaintiff did not address this claim in his response brief. That
alone is a sufficient basis to dismiss the claim. However, Plaintiff's claim as pleaded also fails on
the merits.

Under Oregon law, "[e]very contract contains an implied covenant of good faith and fair
dealing, one that serves to protect the objectively reasonable contractual expectations of the
parties." *Zygar v. Johnson*, 169 Or. App. 638, 645, 10 P.3d 326 (2000). "Significantly, however,
that implied covenant cannot contradict an express contractual term, nor otherwise provide a

---

[1] Plaintiff also references damages based on Defendant's EFTA violations. *Id.* ¶ 33. The Court
considers those allegations as related to his EFTA claim and not his good faith and fair dealing
claim.

remedy for an unpleasantly motivated act that is permitted expressly by the contract." *Id.* Thus, where an express term of the contract governs the issue, the reasonable expectations of the parties are irrelevant, and a plaintiff may not rely on the implied covenant of good faith and fair dealing. *Oregon Univ. Sys. (OUS) v. Oregon Pub. Emps. Union, Loc. 503*, 185 Or. App. 506, 511, 60 P.3d 567 (2002).

Defendant points to language in the Deposit Account Agreement advising the depositor, "We must hear from you NO LATER than 60 days after we sent you the FIRST statement on which the error appeared." Foster Decl. Ex. 1 at 13. Defendant asserts that because Plaintiff did not comply with this provision, he cannot bring a claim. Def. Mot. 16. Leaving aside whether Defendant's interpretation of the provision is correct or compatible with the EFTA[2], Defendant's argument is well-taken to the extent that it identifies substantive contractual provisions that govern error resolution procedures. As pleaded, Plaintiff's claim appears to allege a violation of those contractual provisions. Thus, it cannot proceed as a claim for breach of the implied covenant of good faith and fair dealing. The Court grants the Motion to Dismiss with respect to this claim.

## V.    Claim for Declaratory Relief

Defendant moves to dismiss Plaintiff's claim for declaratory relief because "Plaintiff's complaint mentions 'declaratory relief' only twice, and Plaintiff does not plead any facts specifically in support of his request for declaratory relief." Def. Mot. 17. The Amended Complaint alleges that this Court has jurisdiction over Plaintiff's claim for declaratory relief. Am. Compl. ¶ 2. The prayer for relief seeks "declaratory relief." *Id.* 17. Nowhere in the

---

[2] *See* 15 U.S.C. § 16931 ("No writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter.").

Amended Complaint does Plaintiff explain what declaratory relief he is seeking. The Court grants Defendant's Motion with respect to Plaintiff's claim for declaratory relief.

## VI.    Motion to Strike

Defendant moves to strike allegations in the Amended Complaint that are not cognizable. Def. Mot. 4. Defendant appears to argue that allegations supporting claims barred by the statute of limitations should be stricken because they are impertinent. *Id.* at 6 (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993)). In *Fantasy*, the Ninth Circuit upheld the district court's decision to strike "some seven pages of allegations concerning the tax shelter plan" that was created more than a decade before the lawsuit, where the alleged conduct was outside the four-year statute of limitations and could not serve as a basis for the plaintiff's claim. *Id.* at 1527-28.

The Court declines to strike any allegations from the Amended Complaint. While the Court has concluded that some transfers are outside the statute of limitations for Plaintiff's liability cap claims, the Court declines to hold that they are immaterial or impertinent to this case. In *Fantasy*, the stricken allegations concerned conduct that was remote in time and of a different sort than the conduct that was still actionable. Here, in contrast, Plaintiff alleges similar conduct over a period of only a few months. Given that factual and temporal proximity, it is premature to conclude that such allegations are immaterial or impertinent to the resolution of this case. The Court denies the Motion to Strike.

## VII.    Leave to Amend

A party may amend its pleading once as a matter of course or, thereafter, "only with the opposing party's written consent or with the court's leave." Fed. R. Civ. P. 15(a)(1)-(2). "The court should freely give leave when justice so requires." *Id.* However, the court need not grant

leave to amend if the amendment "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citations omitted). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1116 (9th Cir. 2014) (internal quotation omitted). Amendment is futile "only if no set of facts can be proved . . . that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

The Court concludes that Plaintiff should be granted leave to amend some of his EFTA claims. With respect to his liability cap claims, Plaintiff could allege facts justifying equitable tolling of the statute of limitations, or facts tending to show that transfers outside the 60-day period would have happened even if Plaintiff had timely notified Defendant. However, amendment of Plaintiff's error resolution claims would be futile because the facts show that Plaintiff reported the transfers on his September and October bank statements more than 60 days after those statements were issued, so Defendant had no obligation to follow the EFTA's error resolution procedures. Finally, Plaintiff is granted leave to amend his claims for negligence, breach of the implied covenant of good faith and fair dealing, and declaratory relief consistent with this Opinion.

//

//

//

//

//

//

**CONCLUSION**

The Court GRANTS IN PART and DENIES IN PART Defendant's Motion to Dismiss

Amended Complaint or Strike Portions Thereof [27]. Plaintiff may submit an amended

complaint within 14 days.

IT IS SO ORDERED.


DATED:_____September 19, 2023



MARCO A. HERNÁNDEZ
United States District Judge